RAYMOND R. ABRAMSON, Judge
Appellants Ashley Smith and Archie Coats, Jr., appeal separately from the termination of their parental rights to their son, P.S., born May 17, 2013. Appellants' respective attorneys have each filed a no-merit brief and motion to withdraw as counsel pursuant to Linker-Flores v. Arkansas Department of Human Services , 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), asserting that there are no issues that would support a meritorious appeal. Counsel's briefs contain an abstract and addendum of the proceedings below, detail all adverse rulings made at the termination hearing, and explain why there is no meritorious ground for reversal. The clerk of this court sent copies of the briefs and motions to withdraw to appellants, informing them of their right to file pro se points for reversal. Neither has done so. We affirm the orders terminating Smith's and Coats's parental rights, and we grant their attorneys' motions to withdraw as counsel.
P.S. was taken into custody by the Arkansas Department of Human Services (DHS) in January 2016 after he was admitted *899 to Arkansas Children's Hospital with what appeared to be second-degree burns from his waist down to his feet. The circuit court entered an emergency order followed by an order finding that probable cause existed to remove P.S. and to maintain him in DHS custody.
The adjudication hearing took place on March 30, 2016. At the hearing, Dr. Rachel Clingenpeel, a physician at Arkansas Children's Hospital, testified that P.S. had second-and third-degree burns and that in her opinion, he was forcibly submerged in hot water because the burn patterns presented clean edges around his waist, and his knees and hands were not burned, which demonstrated he was in a retracted seated position when placed into the water. She said that if he had fallen into the water, as Smith indicated, he would have thrashed around and had burns on his knees and hands, as well as splash burns on his body. At the conclusion of the adjudication hearing, the court entered an order finding by clear and convincing evidence-a higher burden than what is required under the Juvenile Code-that P.S. was dependent-neglected due to physical abuse, neglect, and parental unfitness by Smith. The court further found that P.S. was subjected to nonaccidental physical injuries by Smith, that Smith failed to seek appropriate medical treatment for P.S. because she did not want DHS in her life, and that P.S. received treatment only because Smith had summoned emergency help for herself several hours later (when she was having an anxiety attack). The court concluded that these facts constituted extreme cruelty and, thus, aggravated circumstances. Smith did not file an appeal from that order.
On August 18, 2017, DHS filed a petition for termination of parental rights on the basis of three grounds: failure to remedy, subsequent factors, and aggravated circumstances. The court held a hearing on the petition on September 27, 2017. At the conclusion of the hearing, the circuit court took the case under advisement. On November 3, 2017, the circuit court entered an order granting DHS's petition to terminate appellants' parental rights on all three grounds. The parents' separate notices of appeal followed.
Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. Houseman v. Ark. Dep't of Human Servs. , 2016 Ark. App. 227, at 2, 491 S.W.3d 153, 155. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(B), (A) (Repl. 2015). Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. Watson v. Ark. Dep't of Human Servs. , 2017 Ark. App. 484, 529 S.W.3d 259.
We review termination-of-parental-rights cases de novo. Dunbar v. Ark. Dep't of Human Servs. , 2016 Ark. App. 472, at 9, 503 S.W.3d 821, 827. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Norton v. Ark. Dep't of Human Servs. , 2017 Ark. App. 285, at 2. In resolving the clearly erroneous question, the reviewing court defers to the circuit *900 court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. Brumley v. Ark. Dep't of Human Servs. , 2015 Ark. 356, at 7.
In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines the appellant has no meritorious basis for appeal then counsel may file a no-merit petition and move to withdraw. Poss v. Ark. Dep't of Human Servs. , 2014 Ark. App. 514, 443 S.W.3d 594. The petition must include an argument section that lists all adverse rulings the parent received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. Id. The petition must also include an abstract and addendum containing all rulings adverse to the appealing parent that were made during the hearing from which the order on appeal arose. Id. Appellants' respective attorneys have each determined there are no meritorious bases for appeals in this case. We agree.
I. Ashley Smith
Smith's counsel explains that other than the termination itself, there technically were no adverse rulings. However, "out of an abundance of caution," counsel addressed two additional rulings that could be considered adverse. The first was the circuit court's denial of P.S.'s placement with the juvenile's grandmother, Ms. Parker, which occurred at a prior hearing but was referenced at the termination hearing. The second was the circuit court's statement that it could draw a negative inference about Smith's culpability with regard to P.S.'s injuries after Smith asserted her Fifth Amendment privileges against self-incrimination. Counsel further explained why a challenge to the sufficiency of the evidence supporting the termination would not provide a meritorious argument for reversal.
As we have noted, only one ground must be proved to support termination. See, e.g. , Reid v. Ark. Dep't of Human Servs. , 2011 Ark. 187, 380 S.W.3d 918. On March 30, 2016, the circuit court adjudicated P.S. dependent-neglected based on aggravated circumstances. That finding was never appealed. One of the grounds the court found in its termination of Smith's parental rights-which is now properly before this court-is also aggravated circumstances. In termination cases, we have made clear that a challenge to a prior finding of abuse or aggravated circumstances must be made, if at all, in an appeal from the adjudication hearing. See Hannah v. Ark. Dep't of Human Servs. , 2013 Ark. App. 502 ; see also Dowdy v. Ark. Dep't of Human Servs. , 2009 Ark. App. 180, 314 S.W.3d 722. Therefore, the aggravated-circumstances finding stands, and there can be no challenge to the ground of aggravated circumstances at this stage of the case. Because only one ground is needed for termination, it is unnecessary to address the other two grounds also found by the circuit court. See Draper v. Ark. Dep't of Human Servs. , 2012 Ark. App. 112, 389 S.W.3d 58.
In addition to finding a statutory ground for termination, an order terminating parental rights must also be based on clear and convincing evidence that the termination is in the child's best interest. Id. When making a best-interest determination, the circuit court must consider the likelihood the child will be adopted and the potential harm he would face if returned to the parents. Id. Potential harm must be viewed in a forward-looking manner and considered in broad terms. Dowdy , 2009 Ark. App. 180, 314 S.W.3d 722.
*901 In the instant case, the DHS adoption specialist testified that P.S. was adoptable. The specialist said she took into account P.S.'s medical needs, his attachment disorder, and all of his characteristics. She said there were no barriers to adoption. That testimony was not challenged. With respect to potential harm, the same facts supporting the aggravated-circumstances ground for termination support the circuit court's conclusion that the return of P.S. to Smith would result in harm to him. Consequently, the circuit court's best-interest finding provides no meritorious basis for reversal.
In an abundance of caution, Smith's counsel addressed the following two rulings, which provide no basis for reversal. In regard to the court's denying the placement of P.S. with his grandmother, the court is permitted to set termination as the goal unless the child is being cared for by a relative, the relative has made a long-term commitment to the child, and termination is not in the child's best interest. See Elliott v. Ark. Dep't of Human Servs. , 2017 Ark. App. 672, 536 S.W.3d 642. Here, however, P.S. was not being cared for by his grandmother, and the court, at a prior hearing, had already heard evidence pertaining to whether the placement should occur and entered a permanency-planning order on August 2, 2017, finding that it should not. That order was not appealed, and Smith did not ask to relitigate that at the termination hearing. Therefore, it presents no meritorious issue for an appeal now. In regard to the court's drawing a negative inference when Smith asserted her Fifth Amendment privilege against self-incrimination, any potential error in the court's actions had no bearing on the outcome of the case. Therefore, the question whether the court could draw a negative inference from an assertion of the Fifth Amendment privilege does not need to be answered here as it cannot provide a meritorious basis for reversal.
II. Archie Coats, Jr.
The previously recounted facts and discussions also pertain to Coats. The sole adverse ruling concerning Coats was the termination of his parental rights. The circuit court terminated Coats's parental rights on three statutory grounds: failure to remedy, subsequent factors, and aggravated circumstances. When P.S. was removed from Smith's home in January 2016, Coats and Smith were not living together, and although Coats was not the cause for removal, P.S. could not be placed with him. The circuit court ruled in the February 2016 probable-cause order that it was contrary to P.S.'s welfare to be in either parent's custody and ordered the following services for Coats: random drug screens, a drug-and-alcohol assessment, a counseling assessment, a psychological evaluation, and parenting classes. The court also directed Coats to maintain stable housing, employment, and income; remove pictures of P.S. from a GoFundMe website; and inform DHS if he changed jobs or addresses. In the March 2016 adjudication order, the circuit court warned Coats, "If he wants to be part of his child's life, he needs to put down the drugs. If he wants any chance to be taken seriously, he must make a choice. He can use drugs, but he will not raise this child if he does."
Coats tested positive for cocaine and marijuana at his first visit to Recovery Centers of Arkansas on February 16, 2016-fifteen days after the probable-cause order was entered. He tested positive for the same drugs in May 2016 and for marijuana in June 2016. In April, May, June, and July 2017, he tested positive for various drugs, including cocaine and PCP. He also tested negative, however, several times between March and July 2017. But he did not complete the initial recommended drug treatment. Nor did he start the treatment that was recommended in June 2017. Coats failed to comply with the *902 court's order in other respects too. He did not complete the psychological exam. He did not complete counseling. He did not maintain stable employment or housing.
Failure to comply with a case plan, continued drug use, and instability are enough to find a failure to remedy. See, e.g. , Hall v. Ark. Dep't of Human Servs. , 2018 Ark. App. 4, at 3-4 ; Wingate v. Ark. Dep't of Human Servs. , 2017 Ark. App. 662, at 6. Coats failed to comply with court orders and failed to use services that DHS offered. This is sufficient evidence to support termination on either the failure-to-remedy ground or the subsequent-factors ground. See Clements v. Ark. Dep't of Human Servs. , 2013 Ark. App. 493. On this record, we conclude that the circuit court did not clearly err in finding that these statutory grounds existed.
In addition, the best-interest finding by the circuit court provides no meritorious basis for reversal. DHS established that P.S. was adoptable. As for potential harm, the facts, as explained above, including Coats's continued drug use and failure to follow court orders, are more than enough to prove potential harm. See, e.g. , Ozuna v. Ark. Dep't of Human Servs. , 2015 Ark. App. 381, at 8-9, 466 S.W.3d 434, 439-40.
III. Conclusion
From our review of the record and the briefs presented to us, we conclude that counsel have complied with the requirements for no-merit appeals and that the appeal is wholly without merit. Accordingly, we affirm the termination order and grant counsel's motions to withdraw.
Affirmed; motions to withdraw granted.
Glover and Vaught, JJ., agree.