Cite as 2022 Ark. App. 273

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-21-631

| | |
|---|---|
| ANDREA HODGE<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered June 1, 2022<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26JV-19-324]<br><br><br>HONORABLE LYNN WILLIAMS, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Andrea Hodge appeals the Garland County Circuit Court order terminating her parental rights to her children, S.H. (born in November 2015), B.H. (born in February 2014), and M.H. (born in March 2013). On appeal, Andrea argues that the evidence is insufficient to support a statutory ground for termination.[1] We affirm.

On November 13, 2019, the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency-neglect concerning S.H., B.H., and M.H. DHS named Andrea as the mother and Shannon Hodge as the father.

---

[1]The circuit court also terminated the parental rights of the father, Shannon Hodge, but Shannon is not a party to this appeal.

In the affidavit attached to the petition, DHS alleged that Andrea and the children had been living in a dilapidated RV without a door or running water with Harley Jones.[2] DHS further stated that Andrea appeared under the influence of drugs and that she ran into a wall while attempting to enter the bathroom. Harley and Andrea tested positive for methamphetamine and amphetamine. DHS also alleged that when a DHS employee placed S.H. in a car seat and locked the straps between her legs, S.H. asked the employee if "she was going to touch her too down there." S.H. later disclosed being touched by "someone named Steven." On the same day the petition was filed, the court entered an ex parte order of emergency custody.

On November 19, the court found that probable cause existed for the emergency custody. On December 18, the court entered a stipulated adjudication order. In the order, the court found the children dependent-neglected on the basis of substantial risk of harm from neglect and parental unfitness. The court discussed the deplorable condition of the RV and noted that Andrea had tested positive for methamphetamine on more than one drug screen. The court ordered that visitation be at DHS's reasonable discretion.

On March 18, 2020, the court entered an agreed review order. The court found that DHS had made reasonable efforts to provide family services. The court noted that Andrea had complied with the case plan, but that she lacked stable housing and income, and she had tested positive for methamphetamine on two occasions since the last hearing.

---

[2]DHS referred to Jones as the children's "stepfather." The record, however, is unclear on Andrea and Harley's relationship.

On June 16, the court entered an agreed review order. The court again found that DHS had made reasonable efforts to provide family services. As to Andrea, the court found that she had complied with the case plan but that she still lacked appropriate housing. The court noted that she was on the HUD housing waitlist.

On September 16, the court entered a review order and found that Andrea had complied with the case plan but that she was still on the HUD housing waitlist.

On November 6, the court entered an agreed permanency-planning order. The court found that Andrea was complying with the case plan and was making significant and measurable progress. The court noted she had recently obtained HUD housing. The court again found that DHS had made reasonable efforts to provide family services.

On January 26, 2021, the court entered an agreed permanency-planning order. The court found that Andrea had been complying with the case plan and had maintained HUD housing. The court, however, noted that she had tested positive for methamphetamine and admitted using two days prior to that screen. The court again found that DHS had made reasonable efforts to provide family services.

On June 8, the court entered a permanency-planning order, and it changed the goal of the case to adoption. The court found that Andrea had been partially compliant with the case plan but that she had not sustained measurable progress towards reunification. The court noted that she had stable employment and housing, but "she is still using drugs."

On July 2, DHS petitioned to terminate Andrea's parental rights. DHS listed the failure-to-remedy ground for custodial and noncustodial parents.[3] DHS also requested that the court "determine there is little likelihood that services to the family will result in successful reunification as there is no other service that could be provided to the parents that has not already been provided or offered."[4]

On September 13, the court held a termination hearing. Sara Washburn testified that she has been the primary caseworker since October 2020. She explained that the case originated as a protective-services case based on environmental concerns and drug use by the parents. She stated that the children were removed and adjudicated dependent-neglected due to the condition of the RV and Andrea's drug use.

Washburn explained that the children had not had a trial placement with Andrea because "it's been unsafe to place the children with [her]." She testified that the children's therapist stopped Andrea's visits with S.H. in March 2021 because visitations caused regression in S.H. Washburn explained that in April or May 2021, the therapist stopped visitations for the other two children for the same reason.

Washburn stated that Andrea last tested positive for drugs in June 2021 near the time of the permanency-planning hearing. She explained that following that hearing, Andrea

---

[3]DHS additionally pled the failure-to-support and the failure-to-maintain-contact grounds. The court later dismissed those ground.

[4]The request for the finding appears under the heading "8. Facts to support the above-listed grounds."

entered inpatient drug treatment and that Andrea had completed counseling and parenting classes in the program. She stated that Andrea had obtained housing but that she had not been inside the home since Andrea's discharge from drug treatment. Washburn testified that she had made several attempts to conduct a home visit. Washburn further explained that

> the issue is that the children have been in care for nearly two years at this point. . . . It was the very last, last second that services were worked, and the children have just been in care for a very long time, and also the therapist's recommendation has not changed. I've asked for several updates. I've asked for the recommendation several times while she was inpatient over the last few months and it has maintained the same for the same reasons, so we've been unable to have visitations at this point as well.

Misty Cox, the children's therapist, testified that it is not in the best interest of the children to visit Andrea and that the children need at least one year of therapy before contact with Andrea would be appropriate. She further stated the children may never be ready to visit Andrea. She stated that S.H. has self-destructive behaviors, that she is visibly shaken when her mother is mentioned, and that she is not progressing in therapy. As to B.H., Cox stated that he has temper tantrums when his mother is mentioned, that he screams and throws himself on the floor, and that he is not progressing in therapy. Similarly, Cox testified that M.H. is visibly shaken when she mentions his mother. She further related an incident in therapy when she asked M.H. if he was ready to visit his mother. She stated that M.H. obtained a metal paper clip from her desk, broke it in half, and attempted to stab his finger.

Andrea testified that she has a three-bedroom apartment but that DHS had not visited it. She noted that she works at IHOP and that she is only at the residence from 8:00 a.m. to 1:00 p.m. Andrea discussed the RV where she previously lived with the children. She stated

that she and the children had stayed in the RV only one night before DHS removed them, and she explained that her husband's parents own the property where the RV was parked. Andrea stated that she has completed the case plan and that she is willing to complete any additional requirements. She noted that she had completed inpatient drug treatment on August 18, 2021, and that she is in outpatient treatment.

At the conclusion of the hearing, the court orally ruled to terminate Andrea's parental rights. The court found the children's therapist credible and "not unreasonable . . . not biased."

On October 4, the court entered the termination order. The court found the failure-to-remedy ground for noncustodial parents supported termination. The court further found that there is little likelihood that services to the family would result in successful reunification because there is no other service that could be provided to the mother that has not already been provided or offered. Andrea appealed the termination to this court.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the child will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021). Each of these requires proof by clear and convincing evidence, which is the

degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. *Id.*

Our review is de novo. *Dunbar v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 472, 503 S.W.3d 821. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Norton v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 285. In resolving the clearly erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. 356.

On appeal, Andrea does not challenge the circuit court's best-interest finding. Instead, she argues that the evidence is insufficient to support a statutory ground for termination. In the termination order, the court found only the failure-to-remedy ground for noncustodial parents. Andrea was the custodial parent in this case. In the termination petition, however, DHS pled the failure-to-remedy ground for custodial parents, and on our de novo review, we may affirm the circuit court's termination if the ground was alleged in the termination petition and the ground was proved at the termination hearing. *Fenstermacher v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483.

Andrea argues that the failure-to-remedy ground for custodial parents does not support termination because she corrected the conditions that caused the removal of the

7

children. She points out that at the time of the termination hearing, she had completed inpatient drug treatment and had housing and employment. Andrea additionally argues that DHS failed to offer her services in the form of visits with her children and family therapy. She blames the children's therapist and argues that she "was against any efforts toward reunification."

The failure-to-remedy ground for custodial parents requires that the children have been adjudicated by the court to be dependent-neglected and continue to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. *Garlington v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 124, 542 S.W.3d 917. Evidence that a parent begins to make improvement as termination becomes more imminent will not outweigh other evidence demonstrating a failure to comply and to remedy the situation that caused the children to be removed in the first place. *See id.*; *Beck v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 467, 528 S.W.3d 869.

In this case, we hold that the evidence is sufficient to support the failure-to-remedy ground for custodial parents. The children were removed from Andrea's custody in November 2019 due to the condition of the RV and Andrea's drug use. Even though Andrea found housing, she continued to use drugs until June 2021—nineteen months after the children's removal. She completed inpatient drug treatment on August 18, 2021, after DHS filed its termination petition and just one month before the termination hearing. Thus, the evidence shows that Andrea made only last-minute efforts to remedy her drug problem.

As to Andrea's argument that DHS failed to provide her with services, the court found that DHS had made reasonable efforts to provide family services throughout the case. Further, the children's therapist testified that she stopped the children's visits with Andrea because it was not in their best interest. The court found the therapist reasonable. Andrea's argument on appeal is essentially a request to reweigh the evidence, which we cannot do. *See Covin v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 259, 576 S.W.3d 530; *see also Jones-Lee v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 160, 316 S.W.3d 261 (holding that it was within the circuit court's discretion to determine on the conflicting evidence whether the parent needed a specific service). Given these circumstances, we hold that there is sufficient evidence to support the failure-to-remedy ground, and we therefore affirm the termination order.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.