SLIP OPINION



Cite as 2017 Ark. App. 85

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–16–923

| | |
|---|---|
| ALEXTEEN COBB<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN<br><br>APPELLEES | **Opinion Delivered:** February 15, 2017<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT, FORT<br>SMITH DISTRICT<br>[NO. 66JV–14–228]<br><br>HONORABLE LEIGH ZUERKER,<br>JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Chief Judge

Alexteen Cobb is appealing the Sebastian County Circuit Court's order terminating her parental rights to her twin daughters, MR1 and MR2, born August 19, 2009. Her sole argument on appeal is that there was insufficient evidence to support the circuit court's determination that termination was in the children's best interest. We affirm the circuit court's order.

The Arkansas Department of Human Services (DHS) exercised a 72-hour hold on MR1 and MR2 on March 30, 2014, when they were discovered dirty and living in a car in a parking lot with their mother. The court adjudicated the children dependent-neglected on June 5, 2014, finding that they were at a substantial risk of harm due to inadequate supervision and inadequate shelter. The children were placed with appellant's mother, Dianna Jackson, and continued to live with her during the pendency of the case.

The principal concern in this case is appellant's unstable mental health. She had

suffered from unspecified mental-health issues for years, long before this case began. Appellant has another daughter, MC, who was placed in permanent custody with her father, Demetro Cobb, after appellant threatened to kill her in 2007. A no-contact order bars appellant from seeing MC, who was not a party to this proceeding. At the beginning of this case, appellant was diagnosed with schizoaffective disorder. She has suffered from delusions, which she continued to demonstrate during the termination hearing.

The circuit court entered an order on July 19, 2016, terminating appellant's parental rights because it determined that, despite the provision of numerous services, appellant was still in no condition to have custody of the children. The court found three grounds to support the termination: (1) the children had been adjudicated dependent-neglected and had continued out of the custody of the parent for over twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and to correct the conditions that prevented the child from safely being placed in the parent's home, the parent had failed to remedy the conditions; (2) other factors arose subsequent to the filing of the original petition that demonstrated placement of the child with the parent was contrary to the child's health, safety, or welfare and, despite the offer of appropriate family services, the parent manifested incapacity or indifference to remedying the subsequent issues; and (3) aggravated circumstances: there was little likelihood that services to the family would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*, (vii)*(a)*, (ix)*(a)(3)* (Repl. 2015).

Specifically, the court found that, although appellant had partially complied with the case plan by maintaining employment, completing parenting classes, completing a

SLIP OPINION

psychological evaluation, and attending recommended counseling, she had not been taking her medication regularly, had not demonstrated improved parenting skills, and had exhibited disturbing behavior during her visits with the children. The court found that appellant's own testimony showed that she continued to be delusional and did not recognize that she was delusional. The court noted that appellant did not even recognize her mother, Dianna Jackson, as her mother. The court also noted appellant's belief in massive conspiracies wherein she had accused several people, including the DHS caseworker and her own attorney, of skinning her children and eating and smoking their skin, of murdering one of her children and sexually molesting them, and of using the children in satanic rituals. The court found that when appellant was not delusional, she still did not display an appropriate bond or relationship with her children, instead using the time during supervised visits to look at her phone; spray the children with various substances, claiming that they had lice; and pack and repack massive amounts of food she brought to the visits. The court found credible the testimony of MC's father, Mr. Cobb, who testified that appellant had threatened to kill MC and other family members and had repeated her delusions that she had other children who had been dismembered and eaten. The court found that it was in the best interest of the children to terminate appellant's parental rights, finding that the children were adoptable and that they had been living with their grandmother, Ms. Jackson, who planned to adopt them. The court also found that the children would be at substantial risk of serious harm if they were returned to appellant.

Appellant does not challenge the grounds supporting termination; she argues only that

SLIP OPINION

termination was unnecessary and was not in the children's best interest. We review termination–of–parental–rights cases de novo. *Wilson v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 666, at 7, 476 S.W.3d 816, 821. The trial court must make two findings by clear and convincing evidence: (1) at least one statutory ground must exist, and (2) it must be in the child's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341. In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, at 4, 431 S.W.3d 364, 367. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Brown v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 725, at 4, 478 S.W.3d 272, 275. Credibility determinations are left to the fact-finder, here the trial court. *Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, at 7, 434 S.W.3d 371, 375.

Appellant argues specifically that it was unnecessary to terminate her parental rights because her children had been placed with their grandmother, with whom they would permanently remain. She contends that, since the children's permanency was never at risk, the extreme measure of termination was not in their best interest. She argues that permanent custody with Ms. Jackson, rather than termination and adoption, would give her more time to improve her mental health. She contends that the circuit court could have entered a no–contact order rather than terminate her parental rights. She relies on our decision in *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851, to support

her argument.

In *Cranford*, we reversed a court's order of termination for both parents, holding that the court's best-interest finding was clearly erroneous. During the pendency of that case, the child lived with grandparents, where he and his parents had been living before DHS took emergency custody of him following an auto accident. In *Cranford*, this court determined that termination was not necessary to provide greater stability where the child was living with his grandparents, the grandmother testified that she thought it was in the child's best interest to have contact with his parents, and there was no evidence that either parent had ever physically abused or harmed the child.

*Cranford* is distinguishable. In *Cranford*, the circuit court had found no evidence of harm or physical abuse. While this court recognized the "extremely poor judgment" exhibited by the parents in allowing the child to be a passenger in a truck with the father driving intoxicated, there was not a continuous pattern of harmful behavior toward the child. Here, the case began because appellant was living in a car in a parking lot with her two four-year-old daughters. She did not have custody of another daughter, MC, because she had threatened to kill MC. Appellant's therapist, the CASA supervisor, the DHS caseworker, and Ms. Jackson all testified at the termination hearing that the children would be at a substantial risk of harm if placed with appellant. Appellant's therapist testified that he expected the delusions to continue. CASA recommended termination in this case due to concern that appellant could not safely parent her children because of her mental illness. Her caseworker, Lisa Walton, testified that appellant had not been allowed unsupervised visits during the

entire period of the two-year case and that supervision had actually increased for the children's safety from monitoring the visits through a screen, to monitoring the visits from a hallway, to direct monitoring in the room. Ms. Walton testified that she recommended termination rather than permanent custody with the grandmother because, once the case was closed, DHS would no longer provide mental-health support, individual counseling, or medication management. Finally, Ms. Jackson also testified that she preferred to have the court terminate appellant's rights and allow her to adopt the children rather than simply to continue custody with her.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Ford v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 226, at 3, 434 S.W.3d 378, 381. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, at 9, 372 S.W.3d 849, 854. Finally, a parent's past behavior is often a good indicator of future behavior. *Schaible v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 541, at 8, 444 S.W.3d 366, 371. After considering the court's orders, all of the testimony, and appellant's history, we hold that the court's best-interest finding was not clearly erroneous.



Affirmed.

KLAPPENBACH and GLOVER, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.