Cite as 2020 Ark. App. 453

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-20-286

| | | |
|---|---|---|
| | | Opinion Delivered: September 30, 2020 |
| CUTERIA WHEELER | | |
| | APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BJV-18-46] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | HONORABLE RALPH WILSON, JR., JUDGE |
| | APPELLEES | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Cuteria Wheeler appeals after the Mississippi County Circuit Court filed an order terminating her parental rights to her daughter, A.V. (DOB 10-9-2017).[1] Appellant argues on appeal that (1) there was insufficient evidence to support the statutory grounds for termination and (2) there was insufficient evidence that termination was in the best interest of her child. We affirm.

I. *Relevant Facts*

On May 4, 2018, the Arkansas Department of Human Services (DHS) removed A.V. from appellant's custody because of illegal drug use, and A.V. was later adjudicated dependent–neglected. After completing multiple services for her drug issues, appellant

---

[1]The circuit court additionally terminated the parental rights of Donald Jones, A.V.'s father; however, he is not a party to this appeal.

regained custody of A.V., and the case was closed. However, on March 22, 2019, DHS filed a petition for emergency custody and dependency-neglect of A.V. In the affidavit attached to the petition, DHS stated that a seventy-two-hour hold was exercised over A.V. on March 19, 2019. DHS had received a hotline report that appellant was using methamphetamine while in A.V.'s presence. When DHS interviewed appellant, she denied using drugs. However, appellant appeared to be under the influence and became "very irate." Appellant tested positive for methamphetamine.

The circuit court granted the petition, finding that probable cause existed for the removal, and a probable-cause order was filed on March 29, 2019. Appellant was ordered to cooperate with DHS, comply with the case plan, and obey all orders of the circuit court; view "The Clock is Ticking" video; refrain from using illegal drugs or alcohol; submit to random drug screens; participate in and complete parenting classes; obtain and maintain clean, safe, and stable housing and employment; and submit to a drug-and-alcohol assessment and follow any recommendations. An adjudication order was filed on April 24, 2019, finding A.V. to be dependent-neglected as a result parental unfitness and inadequate supervision due to appellant's use of controlled substances while providing care for A.V. The goal of the case was set as reunification with appellant. In addition to its previous orders, the circuit court further ordered appellant to attend AA/NA meetings and to submit to nail testing within thirty days. The circuit court noted that appellant had tested positive for THC on the same date. Finally, the circuit court granted appellant visitation only after three consecutive negative drug screens.

2

The circuit court held a review hearing on July 10, 2019. In its order, the circuit court noted that appellant had only partially complied with the case plan. She had not completed the substance-abuse counseling and either continued to test positive for controlled substances or refused to be tested. Further, appellant missed several visitations with A.V. and was late for a couple of others that she did attend. A permanency-planning hearing was held on August 21, 2019. It was at this hearing that the circuit court changed the goal to adoption. In the permanency-planning order, the circuit court noted that appellant had not complied with the case plan or orders of the court. It further noted that appellant continued to test positive for controlled substances, missed her drug-screen appointments, missed visitations with A.V., and continued to be unemployed. The circuit court ordered her to "comply with the case plan, participate in drug treatment, obtain employment, cooperate with [DHS] and comply with the orders of [the court]."

DHS filed a petition for the termination of parental rights on December 5, 2019, specifically alleging that appellant's parental rights should be terminated based on the statutory grounds of failure to remedy, aggravated circumstances, and subsequent factors. *See* Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2019). A termination hearing was held on January 30, 2020.

At the termination hearing, Audrey Johnson, the caseworker assigned to the case, testified regarding the case history as already outlined above. Ms. Johnson testified that appellant continues to have substance-abuse issues. She explained that out of the thirty times appellant had been drug tested since March 2019, she tested negative only about five times. Because appellant failed to complete an outpatient program, DHS offered appellant

3

an inpatient substance-abuse-treatment program. DHS secured acceptance for appellant to entered Northeast Arkansas Regional Recovery Center. Appellant entered the program on August 14, 2019, but left without completion on August 19, 2019. Although DHS subsequently secured acceptance for appellant to enter the Quapaw House Recovery and Wellness Center (Quapaw House), appellant failed to enter the program at the prearranged time. Thereafter, DHS secured another date for appellant to enter the program. Appellant entered Quapaw House on November 6, 2019, and completed the program on November 21, 2019. However, on December 2, 2019, appellant tested positive for THC, and on December 18, 2019, she refused to be drug screened. Ms. Johnson admitted that appellant's most recent drug test taken on January 13, 2020, was negative; however, Ms. Johnson expressed her concern that appellant seemed to exhibit a pattern of seeking help for her drug use but then returning to drug use shortly thereafter.

Ms. Johnson additionally testified that appellant had failed to maintain stable housing. At the time of the hearing, appellant was living with her mother. Ms. Johnson explained that the home was not environmentally sound and that the child could not live in that home. She observed feces in the home, and the home was infested with roaches.

Violet Broyles, the program assistant assigned to this case, testified that she had provided transportation and had supervised appellant's visitation with A.V. She had been to appellant's home on at least five occasions. Appellant had been living in that home for at least six months. Five adults lived in the home, and A.V. would have to sleep with appellant in appellant's room if returned. Ms. Broyles described the home as "unkept." She explained that she saw hundreds of roaches crawling all over and also in the refrigerator.

4

Ms. Broyles further stated that during one of the visits at DHS two weeks before the termination hearing, she observed roaches crawling out of the toy appellant had bought for A.V.

Appellant admitted that this is the second time she has lost custody of A.V. Although she admitted that she did not submit to a drug screen on December 18, 2019, she claimed that she was sick when DHS came to her home to obtain a sample. Therefore, she alleged that she did not refuse the test but could not provide a sample because of her illness. She offered other excuses for her failures to comply with the case plan. Appellant testified that she was working on the insect infestation and that the home was now less cluttered than before. Additionally, appellant admitted that she had not been employed for months. However, she alleged that she was starting employment at Kentucky Fried Chicken the day after the termination hearing.

Over appellant's objection, the circuit court granted DHS's motion to amend its pleadings to conform to the testimony presented at the hearing pursuant to Arkansas Rule of Civil Procedure 15(b). At the conclusion of the termination hearing, the circuit court orally ruled from the bench that it was granting DHS's petition for termination of parental rights. The circuit court filed a written order terminating appellant's parental rights on February 12, 2020. The circuit court specifically found by clear and convincing evidence that all three statutory grounds alleged in the petition against appellant supported termination and that it is in the best interest of the child to terminate appellant's parental rights. Relevant to appellant's points on appeal, the circuit court made the following specific findings:

5. The Court has considered and reviewed all the evidence submitted and the testimony of the witnesses in this matter, and finds that the Department of Human Services has proven by clear and convincing evidence the following grounds for termination of parental rights set forth in Ark. Code Ann. § 9-27-341 to wit:

. . . .

e. The parent is found by a Court of competent jurisdiction, including the Juvenile Division of Circuit Court to:

. . . .

(3) Have subjected any juvenile to aggravated circumstances. "Aggravated circumstances" means:

a. A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result of successful reunification[.]

. . . .

More specifically, in an attempt to assist the mother in correcting the conditions that caused removal the Department offered services designed to correct the conditions that caused removal. Those services included but were not limited to parenting classes, referrals for counseling, worker visits to the home and other related services. In the first phase of this case the mother worked to correct the conditions that caused removal. This resulted in the child being returned to her custody of November 29, 2018. However, on March 19, 2019 [A.V.] was again placed in the custody of the Department due to the mother being actively under the influence of controlled substances, specifically methamphetamine. The Department again offered a number of services which included a referral for substance abuse treatment. The mother was resistant to participating in services designed to assist her in remedying her use of controlled substances. The mother submitted to a drug and alcohol assessment which recommended that she undergo 12 weeks of outpatient substance abuse counseling. The mother attended three of those sessions and discontinued the program. The Department then requested and the mother agreed to enter an inpatient substance abuse treatment program. The Department secured acceptance for the mother to entered Northeast Arkansas Regional Recovery Center. Curteria Wheeler entered that program on August 14, 2019 but left without completion on August 19, 2019. The Department secured entry for Curteria Wheeler to enter Quapaw House Recovery and Wellness Center. The mother failed to enter the program at the prearranged time and the Department secured another date to enter the program. Curteria Wheeler entered Quapaw House on November 6, 2019 and completed the program on November 21, 2019. However, on December 2, 2019

6

the mother tested positive for controlled substances and on December 18, 2019 refused to provide a sample for the Department to test. Overall the mother has submitted to 25 random drug screens since March 2019. The mother tested negative only on 5 of those screens. Additionally, the mother has been employed for less than 6 weeks in the past 18 months. The mother testified that she last worked at a fast food restaurant, which employment last approximately one month. The mother does not have stable housing. Curteria Wheeler presently resides in a three-bedroom home with five (5) other adults. The mother testified that the juvenile could sleep in the bed of the mother and that she would sleep in a chair. The home in which the mother is presently living is infested with roaches. Testimony of the Department witnesses indicated that the infestation is serious and severe. That visits in the home were forced to be cancelled as a result of the problem. Additionally, the mother brought a toy for the child and when it was placed on the desk of the case worker roaches crawled out of it. Further, testimony was presented that there was feces on the floor in the home. The Court finds that in spite of the services the mother completed she continues to lack stable employment and a stable and suitable residence in which the child could reside. The Court finds that the Department has provided meaningful services that would have resulted in reunification if the mother had fully availed herself of those services and implemented what she learned into her daily life. The Court finds the mother's refusal of substance abuse treatment and her return to the use of controlled substances 10 days after completion of substance abuse treatment, along with the fact the mother's residence is not stable and that the mother lack any real resources to provide for the material needs of the child is clear and convincing evidence that there is little likelihood that further services would result in a successful reunification. . . . The court notes that the testimony of Audrey Johnson was that the mother had continued to test positive for controlled substances throughout the case, that she delayed taking steps to correct her substances abuse, that she was not employed and did not have stable housing. Additionally, that the home in which Cuteria Wheeler was residing was infested with roaches and presented a health and safety concern for the juvenile and the mother had no means in which to financially support the child if the child were returned to her custody. . . . The Court finds Audrey Johnson's testimony was credible.

6. The Court finds by clear and convincing evidence that it is in the best interest of the juvenile to terminate parental rights. In making this finding, the court specifically considered (A) the likelihood that the juvenile will be adopted if the termination petition is granted, specifically the testimony of Audrey Johnson who stated that there is an adoptive family who desires to adopt the juvenile should the Court grant the petition; (B) the potential harm on the health and safety of the juvenile caused by returning the juvenile to the custody of the parents. The Court finds the testimony of the case worker Audrey Johnson was credible and the mother's inability to correct her controlled substance addiction, which has caused her child to twice be placed in the custody of the Department, her lack of stable housing and

employment demonstrate how [A.V.] would be at risk of potential harm if returned to the parent Cuteria Wheeler.

This appeal followed.

## II. *Standard of Review*

A circuit court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in

8

section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.* Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*

### III. *Statutory Grounds*

The circuit court granted the termination petition based on three grounds: (1) the failure-to-remedy ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(b)*; (2) the subsequent-factors ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*; and (3) the aggravated-circumstances ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)*. Although the circuit court found three statutory grounds for termination, only one ground is necessary to support the termination. *See Reid*, *supra*. Appellant argues that the circuit court erred in terminating her parental rights because there was insufficient evidence to support any of the three grounds alleged in

the petition to terminate parental rights. We cannot agree and hold that there was sufficient evidence to support at least the aggravated-circumstances ground.

Arkansas Code Annotated section 9-27-341(b)(3)(B) defines the aggravated-circumstances ground as follows:

(ix)*(a)* The parent is found by a court of competent jurisdiction, including the circuit court juvenile division, to:

. . . .

(3)(A) Have subjected any juvenile to aggravated circumstances.

(B) "Aggravated circumstances" means:

(i) A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification[.]

Regarding the aggravated-circumstances ground, appellant first argues that it was erroneous for the circuit court to consider A.V.'s first dependency-neglect case as part of the factual basis for its findings. However, we have previously rejected this same argument in *McKinley v. Arkansas Department of Human Services*, 2015 Ark. App. 475, 471 S.W.3d 209. A circuit court is free to consider a parent's actions in previous dependency proceedings in determining the appropriateness of termination. *Id.*

Appellant next argues that the circuit court's finding must be reversed because the circuit court cited appellant's failure to maintain appropriate housing and employment, and DHS failed to include these facts in its termination petition. However, appellant ignores the fact that the termination petition included appellant's substance abuse as a factual basis, and the circuit court also cited her substance abuse to support its aggravated-circumstances

10

finding. That finding alone is sufficient to support this ground. *See Jackson v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 95, 595 S.W.3d 418. Because we hold that appellant's continued use of controlled substances throughout the pendency of this case, despite being offered services, is sufficient to support the circuit court's aggravated-circumstances finding for reasons more thoroughly set out below, appellant's argument here lacks merit.

Finally, appellant argues that it was merely speculative for the circuit court to find that her past history would dictate the future and that she needed more time to show that A.V. could be returned to her custody. We disagree.

This is the second occasion in which A.V. was taken into DHS custody as a result of appellant's drug use. However, despite being offered services, including outpatient and inpatient treatment, appellant continues to relapse and use illegal drugs. Ms. Johnson testified that appellant tested negative only five times out of the thirty times she had been drug tested since March 2019. Because appellant failed to complete an outpatient program, DHS offered appellant an inpatient substance-abuse-treatment program. Appellant failed to complete her inpatient-treatment program in August 2019. Although appellant subsequently completed the program on November 21, 2019, appellant tested positive for THC on December 2, 2019, and refused to be drug screened on December 18, 2019. Ms. Johnson's concern that appellant would relapse again in the future is hardly speculative given this history, and giving appellant more time is contrary to the statutory mandate to provide permanency for A.V. The intent of our termination statute is to provide permanency in a child's life in all circumstances where return to the family home is contrary to the child's health, safety, or welfare, and it appears from the evidence that return to the

11

family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Further, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Helvey v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 418, 501 S.W.3d 398. Given the evidence presented, we hold that the circuit court's finding that there was little likelihood that services would result in successful reunification was not clearly erroneous. Because we conclude that DHS adequately proved the aggravated-circumstances ground, we need not discuss the remaining grounds found by the circuit court. *See Kohlman v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595.

IV. *Best Interest*

Appellant does not challenge the circuit court's findings regarding adoptability. Thus, we need not consider that issue. *Yarbrough v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 429, 501 S.W.3d 839. Instead, she alleges that the evidence failed to establish that she posed such a potential harm that would warrant terminating her parental rights. Appellant cites several cases in support of her argument that reversal is warranted, including *Kight v. Arkansas Department of Human Services*, 87 Ark. App. 230, 189 S.W.3d 498 (2004). In *Kight*, we reversed a termination-of-parental-rights order when the evidence was that, notwithstanding a one-time relapse, Kight had remained clean and sober for over six months, had maintained full-time employment, and had completed everything that was required of her. *Kight* is, however, distinguishable. Although appellant completed parenting classes and inpatient drug treatment and attended some visitation with her daughter as she alleges, unlike *Kight*, she had repeated relapses of drug use after receiving treatment and

12

failed to maintain stable and appropriate housing. Although recent progress and efforts to comply in the months and weeks leading up to a termination hearing may, and should be, taken into consideration, it is not a bar to termination of parental rights when a parent fails to demonstrate an ability to remain sober in an unstructured environment for a significant period of time. *Moore v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 87. Here, appellant tested positive for THC and refused to take another drug screen after completing inpatient treatment shortly before the termination hearing. As such, appellant's behaviors over the course of the entire case as outlined above do not show enough stability to render the circuit court's finding that appellant posed a risk of potential harm to A.V. clearly erroneous. Accordingly, we affirm the order terminating appellant's parental rights.

Affirmed.

HARRISON and KLAPPENBACH, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor child.

13