Cite as 2022 Ark. App. 145

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-21-432

|  |  |  |
|---|---|---|
| KRISTEN GIBBY | | Opinion Delivered March 30, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE CONWAY COUNTY |
| V. | | CIRCUIT COURT |
| | | [NO. 15JV-20-59] |
| | | |
| ARKANSAS DEPARTMENT OF | | HONORABLE TERRY SULLIVAN, |
| HUMAN SERVICES AND MINOR | | JUDGE |
| CHILD | | |
| | APPELLEES | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Kristen Gibby appeals after the Conway County Circuit Court filed an order terminating her parental rights to her child, IG (DOB 09-09-20).[1] Appellant argues on appeal that (1) there was insufficient evidence to support the statutory grounds for termination and (2) there was insufficient evidence that termination was in IG's best interest.[2] We affirm.

I. *Relevant Facts*

---

[1]The circuit court additionally terminated the parental rights of Payton Lane Gibby, IG's father; however, he is not a party to this appeal.

[2]This case is the companion to *Gibby v. Arkansas Department of Human Services*, 2022 Ark. App. 146, also decided today, in which appellant has appealed the termination of her parental rights to two other children, TP (DOB 10-24-19) and TF (DOB 01-14-18).

On September 10, 2020, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect of IG. In the affidavit attached to the petition, DHS stated that a seventy-two-hour hold was exercised over IG because it could not ensure IG's health and safety after his birth due to the injuries sustained by IG's older sibling, TP. It went on to explain that IG's siblings, TP and TF, had been removed from appellant's custody on April 11, 2020, after TP was admitted to Arkansas Children's Hospital with multiple bruises on her body, bilateral retinal hematomas, and subdural hematomas on both sides of her brain and in her spinal column.

The circuit court granted the petition, finding that probable cause existed for the removal, and a probable-cause order was filed on November 12, 2020. An adjudication order was subsequently filed on January 20, 2021, finding IG dependent-neglected. The circuit court explained that it took judicial notice of the evidence submitted in the companion case involving IG's siblings, TF and TP, including the previous testimony offered by Dr. Rachel Clingenpeel. The order further made the following findings:

> The Court finds that abuse, resulting in serious physical injuries, were suffered by another infant child, a sibling to the juvenile respondent, in the home of the parents prior to that child being placed in the custody of the Department. The Court finds that a substantial risk of serious harm as a result of abuse to a sibling exists to the juvenile respondent [IG].

The goal of the case was set as reunification with a fit parent. Appellant was ordered to cooperate with DHS, comply with the case plan, and obey all orders of the circuit court; view "The Clock is Ticking" video; remain drug-free and submit to random drug screens; participate in and complete parenting classes; and obtain and maintain clean, safe, and stable

housing and employment. Further, if requested by DHS, appellant was ordered to submit

to a drug-and-alcohol assessment and follow any recommendations; submit to a psychological

evaluation and follow any recommendations; and attend and participate in counseling

and/or AA/NA meetings. Appellant did not appeal from this order or its findings.

A joint review hearing took place on February 25, 2021.[3] Regarding compliance with

the case plan, the circuit court found that appellant had

> housing, income, transportation, and has complied with counseling and other
> services. However, horrendous injury to a child occurred while the juvenile was in
> the care of the mother and father only, as testified to by the mother and father.
> Payton Lane Gibby is incarcerated at this time for charges relating to the battery of
> the child. The parents have given a number of explanations for what may have
> happened, but none of those explanations are plausible. . . . The Court specifically
> finds the testimony of Brandy Cochran is credible. The Court finds neither of the
> parents' testimony was credible.

It was at this hearing that the circuit court changed the goal to adoption following

termination of parental rights.

DHS filed a petition for the termination of parental rights on March 2, 2021,

specifically alleging that appellant's parental rights should be terminated under the following

grounds pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(vi)(*a*), (vii)(*a*), and

(ix)(*a*)(2)–(3) (Supp. 2021): a finding by the court that the juvenile or a sibling was dependent-

neglected due to abuse that could endanger the life of the child and was perpetrated by the

juvenile's parent, parents, or step-parent; subsequent factors; that the parent had committed

---

[3]Even though IG's dependency-neglect case was filed separately, the case tracked the dependency-neglect case of his older siblings, TF and TP. Although separate resulting orders were filed, the circuit court held joint review and termination hearings in which the circuit court heard evidence regarding both cases simultaneously.

or aided in a felony battery that resulted in serious bodily injury to any juvenile; and aggravated circumstances, specifically that there is little likelihood that services to the family would result in successful reunification and that a child or sibling has been neglected or abused to the extent that the abuse could endanger the life of the child. A joint termination hearing was held on April 8, 2021.

Because we detail the testimony and evidence presented at the joint termination hearing in the companion case, *Gibby*, 2022 Ark. App. 146, involving IG's older siblings, we do not repeat those facts here.

At the conclusion of the termination hearing, the circuit court orally ruled from the bench that it was granting DHS's petitions for termination of parental rights filed in both cases. The circuit court subsequently filed a separate written order terminating appellant's parental rights to IG on June 9, 2021. Regarding IG, the circuit court specifically found by clear and convincing evidence that all the grounds alleged in the petition against appellant supported termination and that it is in the best interest of IG to terminate appellant's parental rights. Relevant to appellant's points on appeal, the circuit court made the following specific findings:

> 4. The Court has considered and reviewed all the evidence submitted and the testimony of the witnesses in this matter, and finds that the Department of Human Services has proven by clear and convincing evidence that:
>
> > a. The court has found the juvenile or a sibling dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents or step-parent or step-parents. [TP] and [TF], siblings of the juvenile [IG], were dependent neglected due to significant injuries to the juvenile [TP] that was at variance with

4

the history given by the parents. From the parents' own testimony, they were the only ones who were with [TP] when she was injured, therefore either [TP's] mother, or her step-father, Payton Gibby, abused her to such an extent that it could and did endanger her life. The baby almost died on the night of April 11, 2020, and a year later, she is still recovering from those injuries. Those injuries included extreme injury to [TP], at that time a five (5) month old baby, including sub traumatic subdural hemorrhage, acute respiratory failure, fractured rib, retinal hemorrhaging, abrasions on her ear, contusions on her thorax, left lower leg, right lower leg, and right forearm. The Court adjudicated the juveniles dependent neglected based upon the history given about the injuries sustained by [TP] were at variance with the medical opinion of Dr. Clingenpeel. The parents told different stories as to what caused the injuries to the juvenile, none of which were capable of causing such serious and devastating injuries. The Court found that the child was abused and that the previous testimony of Kristen [Gibby] and Payton Lane Gibby before the Court as to how the child's injuries were received is not credible. The testimony heard at the Termination of parental rights hearing from the witnesses is replete with the mother's anger issues, and her feelings toward the juvenile. The Court specifically finds the testimony of Ashley Coffman, Betty Hill and Gena Coffman credible. She threatened to have the juvenile ripped out of her womb, and asked other people to adopt him. The mother herself showed her inability to control her anger on the stand today. The mother was inappropriate on the witness stand, cursing and having an angry outburst. Despite the services given to the mother, she has not resolved her anger issues, and is still a risk to any juvenile who is around her. Further the Court finds Payton Gibby's testimony credible regarding the mother's admission of recent drug use. The Court finds throughout this case, Payton Gibby has shown that he will not protect the juveniles from Kristen [Gibby].

b.   That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent. The juvenile was removed due to the serious physical abuse of the juvenile [TP], his sibling.

5

Since that time, the mother and father have continued to come up with explanations for the injuries that were not possible. Further, Payton Gibby testified that the mother admitted to him she was using illegal substances, and showed him her track marks. The mother has failed to disclose the real reason behind the juvenile's injury, and has instead used illegal substances, without telling the Department, or attempting any type of rehabilitation. This shows an indifference at the very least to remedy the subsequent factors. The Court has found that the Department has provided reasonable efforts to provide services to correct the parents' issues, however the mother cannot or will not be honest with the Department about the cause of the juvenile's injuries or her substance abuse issues. The attempt to rehabilitate the mother's anger and drug issues has been of no use, due in part to the mother's inability to be honest. Further, the father has shown throughout the majority of the case that he will not protect the juvenile.

c. The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:

    i.    Have committed a felony battery that results in serious bodily injury to any juvenile or to have aided or abetted, attempted, conspired, or solicited to commit felony battery that results in serious bodily injury to any juvenile; This Court finds that the mother has either committed a felony battery, or conspired in Payton Gibby's committing a felony battery, that resulted in serious bodily injury to [TP], her child, the juvenile [IG's] sibling. The juvenile suffered from hemorrhaging in her brain and eyes, broken bones, and contusions, which are serious injuries. The Court finds Payton Gibby's testimony today to be credible.

    ii.    (A) Have subjected any juvenile to aggravated circumstances. (B) "Aggravated circumstances" means:

        1.    (i) A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification; The juvenile [TP] was subjected to extreme cruelty. Dr. Clingenpeel testified

6

that the injury had to be caused by extreme force, and likened it to a high impact car accident. Whatever mechanisms cause these injuries, including crushing the child, squeezing the child, battering the child, hitting the child, throwing the child, or shaking the child were extremely cruel. Further due to the serious nature of the injuries, and the mother's continued refusal to account for them, there will be little likelihood that any further services could successfully reunify this family.

2. *(iii)* A child or sibling has been neglected or abused to the extent that the abuse or neglect could endanger the life of the child. The juvenile [TP], sibling of [IG] was subjected to physical abuse that endangered her life. She had several serious and severe injuries, to her brain, body, and bones. These injuries, particularly her brain injuries, could have easily taken this child's life. Further the mother continues to show unchecked anger problems. The testimony today was replete with the violence of the mother, including threats that she has made to harm the juveniles or Mr. Gibby. This Court finds it is NOT safe to put any child with this mother.

5. The Court finds by clear and convincing evidence that it is in the best interest of the juveniles to terminate parental rights. In making this finding, the court specifically considered (A) the likelihood that the juvenile will be adopted if the termination petition is granted, specifically the testimony of Brandy Cochran who stated due to the personalities, physical characteristics, health and placement of the juveniles the likelihood of the juveniles being adopted is high, and the Court finds based upon these factors that the juveniles are adoptable; (B) the potential harm on the health and safety of the juvenile caused by returning the juvenile to the custody of the parent(s). The Court finds the testimony of the evidence today, even from the mother's own behavior show how these, or any juveniles placed with the mother, would be at risk of potential harm if returned to the mother due to her anger issues, and shown by her cruelty to the juvenile. Further, the Court finds that Payton Gibby failed to protect the vulnerable juveniles from Kristen Gibby and her violence, and has not shown that he will.

6. As such, the Court grants the Petition of the Department of Human Services and hereby terminates all parental rights between Kristen [Gibby] and her child. As such, the Court grants the Petition of the Department of Human Services

7

and hereby terminates all parental rights between Payton Gibby and his child. Any prior orders directing the parent(s) to pay on-going child support on behalf of the juvenile shall cease upon entry of this order.

This appeal followed.

## II. *Standard of Review*

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing

8

by clear and convincing evidence of one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.* Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*

## III. *Statutory Grounds*

The circuit court granted the termination petition on the basis of the following statutory grounds under Arkansas Code Annotated section 9-27-341(b)(3)(B)(vi)*(a)*, (vii)*(a)*, and (ix)*(a)(2)–(3)*: a finding by the court that the juvenile or a sibling was dependent-neglected due to abuse that could endanger the life of the child and was perpetrated by the juvenile's parent, parents, or step-parent; subsequent factors; that the parent had committed or aided in a felony battery that resulted in serious bodily injury to any juvenile; and aggravated circumstances, specifically that there is little likelihood that services to the family would result

in successful reunification and that a child or sibling has been neglected or abused to the extent that the abuse could endanger the life of the child. Although the circuit court found multiple statutory grounds for termination, only one ground is necessary to support the termination. *See Reid*, *supra*. Appellant argues that the circuit court erred in terminating her parental rights because there was insufficient evidence to support any of the grounds alleged in the petition to terminate parental rights. Appellant's arguments in this appeal are identical to those she alleged in the appeal involving IG's older siblings, which we also affirm today. Therefore, for the same reasons we more fully explained in *Gibby*, 2022 Ark. App. 146, we cannot agree with appellant's arguments and hold that there was sufficient evidence to support the aggravated-circumstances ground.

Appellant is essentially asking this court to reweigh the evidence in her favor and to reach a result contrary to that of the circuit court. However, it is not reversible error for the circuit court to weigh the evidence differently than how appellant asks the evidence to be weighed. *Bentley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 374, 554 S.W.3d 285. The credibility of any witness's testimony is to be assessed by the trier of fact—and the trier of fact may believe all, part, or none of it. *Id.* Here, the circuit court credited other witnesses' testimony over that of appellant's. Having considered these facts, we cannot hold that the circuit court clearly erred in its findings, and we affirm the circuit court's aggravated-circumstances finding. Because we conclude that DHS adequately proved the aggravated-circumstances ground, we need not discuss the remaining grounds found by the circuit court. *See Kohlman v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595.

IV. *Best Interest*

Appellant does not challenge the circuit court's findings regarding adoptability. Thus, we need not consider that issue. *Yarbrough v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 429, 501 S.W.3d 839. Instead, she alleges that the evidence failed to establish that she posed such potential harm that would warrant terminating her parental rights. Appellant argues on appeal that the circuit court erred because there is no evidence that she has harmed IG, she does not have anger issues, she has bonded with IG, she has complied with the case plan and court orders, and she has showed that she could provide a safe home for IG by separating herself from Mr. Gibby. We disagree.

As we explained in *Gibby*, 2022 Ark. App. 146, evidence was presented that appellant either played a role in causing TP's injuries or, at the very least, failed to protect TP from the abuse. We have previously held that a parent's failure to protect provides an adequate basis for finding that a child would be subject to potential harm if returned to the parent and, as such, will support a circuit court's assessment of potential harm. *Tovias v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 337, 601 S.W.3d 161. Moreover, Arkansas appellate courts have repeatedly held that a parent's past behavior is an indicator of likely potential harm should the child be returned to the parent's care and custody. *Yelvington v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 337, 580 S.W.3d 874. Appellant is essentially asking us to reweigh the evidence and second-guess the circuit court's credibility determinations, which we decline to do here. *See Bentley, supra*. Because we are not left with a definite and firm conviction that a mistake has been made, we hold that the circuit court did not clearly err in finding that

termination was in IG's best interest. Accordingly, we affirm the order terminating appellant's parental rights.

Affirmed.

GRUBER and VAUGHT, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Casey D. Copeland*, attorney ad litem for minor child.